IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRYSON TYREESE TOMPKINS,

       Plaintiff,

 v.

TERESA GAIER, SALAM SYED,
ROBERT EASTERSON, and
RICHARD COTTON,[1]

       Defendants.

OPINION and ORDER

18-cv-446-jdp

---

  Plaintiff Bryson Tyreese Tompkins, appearing pro se, is a former state of Wisconsin inmate. Tompkins alleges that a correctional officer gave him his cellmate's medications, that this made him very ill, and that no one at the prison helped him. Tompkins brings a Wisconsin-law negligence claim against the correctional officer who gave him the incorrect medication and he brings Eighth Amendment claims against prison officials who failed to help him. Defendants have filed a motion to dismiss part of the case and a motion for summary judgment on the rest of it. I will grant defendants' motion and dismiss the case for a number of reasons, including that Tompkins failed to exhaust his administrative remedies for some of his Eighth Amendment claims, he fails to show that a correctional sergeant disregarded his health, and he failed to follow Wisconsin law by properly filing a notice of claim about his negligence allegations.

---

[1] I have amended the caption to reflect the proper spelling of defendants' names.

## UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff Bryson Tyreese Tompkins is a former state of Wisconsin inmate. This case is about events that occurred while Tompkins was incarcerated at Columbia Correctional Institution. All of the defendants worked there during the events in question: Robert Easterson was a correctional officer, Richard Cotton was a correctional sergeant, Salam Syed was a doctor, and Teresa Gaier was a nurse.

On March 13, 2018, during the evening medication pass, Easterson approached Tompkins's cell door and asked who was asking for their medications. The parties dispute how Tompkins answered. Defendants say that Tompkins replied with "Gordon" (the name of Tompkins's cellmate), that Easterson attempted to confirm by asking, "Gordon?" and that Tompkins replied, "Yes." Tompkins says that he said, "Tompkins." The parties agree that Tompkins was not wearing his identification, nor did Easterson specifically ask him to present it.

The parties also dispute how Easterson dispensed the medications. Defendants say that Easterson showed Tompkins the medications meant for Gordon, paroxetine and amitriptyline, to confirm they were Tompkins's medications. Tompkins agreed, and Easterson dispensed the medication into a cup. Tompkins says that Easterson did not show him the medications; instead he dispensed them into the cup and gave them to Tompkins. Tompkins says that he assumed the medications were his, so he swallowed them and then said, "This medication tastes weird, it doesn't taste like my Acetaminophen. This isn't my meds."

Easterson reported to defendant Sergeant Cotton that he had inadvertently given Tompkins the wrong medication. Cotton approached Tompkins and confirmed that Easterson

2

had given Tompkins the wrong medication. Tompkins reported that he was nauseated and wasn't feeling well.

Both Easterson and Cotton spoke with Health Services Unit (HSU) staff by phone. Cotton does not remember who he talked to. Easterson spoke to defendant Nurse Gaier, explaining the medications he gave to Tompkins. Nurse Gaier told Easterson that she would contact defendant Dr. Syed and that Tompkins should be monitored for changes in the meantime. Nurse Gaier called Easterson back with Dr. Syed's response, saying that Tompkins would be okay and would be monitored throughout the night.

The parties dispute the extent of Tompkins's reaction to the medications. Defendants say that over the rest of second shift, Cotton checked on Tompkins every 15 to 30 minutes, and after about a half hour, Tompkins appeared to be back to his normal self. Tompkins did not appear to be sick, nor did he complain that he felt sick. Tompkins says that he vomited, was in and out of consciousness, and suffered dizziness, blurred vision, chest pain, and dry mouth.

Third-shift staff was notified to continue monitoring Tompkins and a nurse placed him on the will-call list to be evaluated by the HSU the next day. Defendants say that the next morning, Tompkins refused to be seen. Tompkins disputes this, saying that he was not asked to be seen.

Tompkins filed an inmate grievance, No. CCI-2018-6748, about Easterson giving him the wrong medication and correctional officers failing to call medical staff to help him. Tompkins also filed a notice of claim about these events, No. NOC-2018-05234. Tompkins served the notice of claim by first-class mail.

ANALYSIS

Tompkins contends that defendant correctional officer Easterson was negligent under Wisconsin law by giving him another inmate's medications, and he contends that defendants Dr. Syed, Nurse Gaier, and Correctional Sergeant Cotton violated his rights under the Eighth Amendment to the United States Constitution by failing to help him after he ingested the medication.

A.  **Eighth Amendment**

I'll start with Tompkins's federal claims. Defendants contend that they should be granted summary judgment on some of Tompkins's Eighth Amendment claims because he failed to exhaust his administrative remedies. Alternatively, they argue that all of his Eighth Amendment claims should be dismissed because the undisputed facts show that defendants did not consciously disregard his health.

The Eighth Amendment prohibits prison officials from acting with conscious disregard toward prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

**1. Exhaustion of claims against defendants Syed and Gaier**

Under the Prison Litigation Reform Act, prisoners must exhaust all available administrative remedies before filing a lawsuit in federal court about prison conditions. 42 U.S.C. § 1997e(a). To comply with 1997e(a), a prisoner must take each step within the administrative process, *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. To exhaust administrative remedies in Wisconsin, inmates must follow the inmate complaint review process set forth in the Wisconsin Administrative Code ch. DOC 310. The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). Failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be proven by the defendants. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).

It is undisputed that Tompkins filed only one inmate grievance about the events of this case, No. CCI-2018-6748, about Easterson giving him the wrong medication and correctional officers failing to call medical staff to help him. Defendants argue that Tompkins didn't exhaust his claims against Dr. Syed and Nurse Gaier because he complained only about the actions of

correctional officers, not actions or inactions of medical personnel. They note that Tompkins named only security staff in the grievance.

The precise names given in the grievance are not dispositive, because § 1997e(a) does not require a prisoner to identify a defendant by name in his grievance. *See Jones v. Bock*, 549 U.S. 199, 219 (2007) ("[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."). But Tompkins was still required to "alert[] the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). I agree with defendants that Tompkins did not alert grievance examiners to the alleged wrongdoing by medical staff Syed and Gaier; the grievance discussed only Easterson's mishandling of medication and security staff's failure to get him medical help. Because Tompkins did not file and exhaust a grievance alleging that medical staff failed to help him after they were notified of his problem, I will grant summary judgment to defendants on his claims against Syed and Gaier, and I will dismiss those claims without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice). Although the dismissal is without prejudice, Tompkins likely will not be able to exhaust his claims because any future grievance would be untimely.

2.  **Merits of claim against defendant Cotton**

I granted Tompkins leave to proceed on an Eighth Amendment claim against Correctional Sergeant Cotton for lying to Tompkins when he told Tompkins that he contacted Syed and Gaier for medical help. It is undisputed that defendant Cotton was aware of Tompkins's medical problems. But Tompkins no longer asserts that Cotton failed to contact medical staff. Instead, the parties agree that both Easterson and Cotton contacted HSU staff, and were told by Dr. Syed and Nurse Gaier that Tompkins would be okay and that he would

6

be monitored. I will grant summary judgment to defendants on the claim against Cotton because the undisputed facts show that Cotton was not lying about contacting medical staff; his efforts in contacting the HSU shows that he did not disregard Tompkins's health.

The parties dispute what happened after Syed and Gaier said that Tompkins would be monitored, but those disputes ultimately do not matter to Tompkins's claims. Defendants say that Cotton checked Tompkins every 15 to 30 minutes and that within about a half hour, Tompkins appeared to return to normal health. Defendants also say that Tompkins refused to be seen by medical staff the next day. Tompkins says that he became very ill, but no one checked on him and that he was not given the opportunity to see medical staff. But I've already granted summary judgment to Syed and Gaier on exhaustion grounds, and Tompkins did not bring a claim against Cotton for failing to monitor him. Instead, Tompkins alleged in his complaint that he told an officer named Turner that he was ill. *See* Dkt. 1, at 5. But I did not allow Tompkins leave to proceed on a claim against Turner because he did not name Turner as a defendant and because he did not suggest that Turner was lying when Turner told him that medical staff was aware of the problem. So although the parties dispute the severity of Tompkins's illness and staff's response to it, those disputes are not material to Tompkins's Eighth Amendment claims against Cotton.

B. **Negligence**

That leaves Tompkins's Wisconsin-law negligence claim against defendant Easterson for giving him his cellmate's medication. Although I am dismissing Tompkins's federal claims, I will retain jurisdiction to decide the state-law negligence claim because it is clearly meritless and it would be inefficient to leave the claim open for a later state court action. *See Korzen v. Local Union 705*, 75 F.3d 285, 288–89 (7th Cir. 1996) ("The normal practice of course is to

7

relinquish jurisdiction over a supplemental claim when the main claim is dismissed before trial, but if the supplemental claim is easily shown to have no possible merit, dismissing it on the merits is a time saver for everybody.").

Defendants say that the negligence claim should be dismissed because Tompkins failed to comply with Wisconsin's notice-of-claim statute, Wis. Stat. § 893.82, by failing to serve it by certified mail, which was the only approved method at the time of the events of this case.[2]

Tompkins sent his notice by first-class mail, but this doesn't satisfy the statute. *See Sorenson v. Batchelder*, 2016 WI 34, ¶ 46, 368 Wis. 2d 140, 885 N.W.2d 362 (affirming dismissal of action after concluding that personal service did not comply with certified mail requirement of Wis. Stat. § 893.82(5)); *Kelly v. Reyes*, 168 Wis. 2d 743, 744, 484 N.W.2d 388, 388 (Ct. App. 1992) (affirming dismissal of action where plaintiff used "regular mail, not certified mail to serve notice of his claim upon attorney general"); *Thomas v. Mashak*, No. 16-cv-496-bbc, 2017 WL 5195252, at *4 (W.D. Wis. Nov. 9, 2017), *aff'd*, 743 F. App'x 702 (7th Cir. 2018) (notice sent by first-class mail did not satisfy § 893.82). So I will dismiss Tompkins's negligence claim against Easterson. That means that the entire case will be dismissed.

**C. Motion to stay**

Defendants have filed a motion to stay the pretrial-submission deadlines pending a ruling on their summary judgment motion. Dkt. 44. Because this order dismisses the case, I will deny that motion as moot.

---

[2] The statute has since been amended to allow personal service. 2019 Wis. Act 29.

ORDER

IT IS ORDERED that:

1. Defendants' motion to dismiss and for summary judgment, Dkt. 22, is GRANTED.

2. Defendants' motion to stay pretrial-submission deadlines, Dkt. 44, is DENIED as moot.

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered February 21, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge